57 P.3d 295 (2002)
114 Wash.App. 312
Dixie BLANKENSHIP, a single woman, Appellant,
v.
Julianne KALDOR and John Doe Kaldor, and the marital community thereof, Respondents.
No. 20857-5-III.
Court of Appeals of Washington, Division 3, Panel Five.
November 7, 2002.
As Amended November 12, 2002.
*296 Simeon Osborn, Susan Machler, The Osborn Law Firm, Seattle, WA, for Appellant.
Robert G. Schultz, Leavy, Schultz, Davis & Fearing, Kennewick, WA, for Respondents.
BROWN, C.J.
After the statute of limitations had run, the trial court summarily dismissed Dixie Blankenship's personal injury action against Julianne Kaldor and John Doe Kaldor for insufficient service of process. Although we agree the service was defective, under these facts, we conclude Ms. Kaldor waived the insufficiency. Accordingly, we reverse.

FACTS
On September 6, 1997, Ms. Blankenship and Ms. Kaldor were in a car accident. At the time, Ms. Kaldor was a minor and lived primarily with her mother. After living primarily with her father for about two years, on August 10, 2000, Ms. Kaldor moved to Portland. She maintained a checking account *297 at a Richland credit union with her father's address on the checks.
On September 1, 2000, Ms. Blankenship filed a personal injury complaint against Ms. Kaldor. On that same day, a process server attempted to serve Ms. Kaldor at her mother's house. The process server was told Ms. Kaldor "no longer was in town but was in Portland, Oregon." Clerks Papers (CP) at 20. Her mother called Ms. Kaldor's father, Reed Kaldor, and made arrangements for the process server to bring the summons to his home the next day. Mr. Kaldor told the process server Ms. Kaldor got mail at his house and he should be seeing her soon. The process server left the summons with Mr. Kaldor. According to the process server Mr. Kaldor indicated "he would turn these [the process] into his insurance company" and that, "this should be no problem his insurance would take care of it." CP at 20. Ms. Kaldor was an insured under her father's insurance policy. The next business day, Mr. Kaldor mailed a copy of the summons to Ms. Kaldor in Portland and gave the original to his insurance agent. On September 8, 2000, Ms. Kaldor's attorney, retained by the insurance company, filed a notice of appearance, reserving defenses, including service of process.
Instead of answering the complaint, Ms. Kaldor's attorney sent interrogatories and requests for production, without specifically inquiring about service. Defense counsel also deposed Ms. Blankenship and photographed her residence.
Approximately nine months after filing her complaint, Ms. Blankenship first informally asked for an answer, then, when unsuccessful, formally sought an order of default. Ms. Kaldor answered the complaint on December 2, 2001, pleading the affirmative defenses of insufficiency of service of process and statute of limitation. Ms. Kaldor prevailed on those issues at summary judgment. Ms. Blankenship appealed.

ANALYSIS

A. Insufficiency of Service
The issue is whether the trial court erred in granting summary judgment after determining Ms. Kaldor was improperly served under either RCW 4.28.080(15) or (16), and rejecting Ms. Blankenship's theory of equivalent actual notice.
We review the grant of a motion for summary judgment de novo. This court engages in the same inquiry as the trial court. Benjamin v. Wash. State Bar Ass'n, 138 Wash.2d 506, 515, 980 P.2d 742 (1999). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993); CR 56(c).
Washington requires civil damage actions to be commenced within three years. RCW 4.16.080. An action is commenced when a "complaint is filed or the summons is served, whichever occurs first." Gerean v. Martin-Joven, 108 Wash.App. 963, 968, 33 P.3d 427 (2001), review denied, 146 Wash.2d 1013, 51 P.3d 88 (2002). Once the complaint is filed, a plaintiff has 90 days to serve the defendant. RCW 4.16.170.
First, we discuss Ms. Blankenship's substitute service contentions. Substitute service of process is effective when a copy of the summons is left at the defendant's house of usual abode, with a person of suitable age and discretion, who is then a resident therein. RCW 4.28.080(15); Sheldon v. Fettig, 129 Wash.2d 601, 607, 919 P.2d 1209 (1996). The term "usual abode" is liberally construed and "under certain circumstances a defendant can maintain more than one house of usual abode." Sheldon, 129 Wash.2d at 609, 611, 919 P.2d 1209. A place of usual abode, however, must be "a place where the defendant's domestic activity is centered and where service left with a family member is reasonably calculated to come to the defendant's attention within the statutory period for making an appearance." Gross v. Evert-Rosenberg, 85 Wash.App. 539, 542, 933 P.2d 439 (1997).
Whether a residence amounts to a place of usual abode is a question of law that we review de novo. Sheldon v. Fettig, 77 Wash.App. 775, 779, 893 P.2d 1136 (1995), *298 aff'd, 129 Wash.2d 601, 919 P.2d 1209 (1996). Our inquiry is whether at the critical time Ms. Kaldor's father's home was a center of domestic activity for her.
In Sheldon, the defendant had moved from an apartment in Renton to Chicago, to begin training as a flight attendant. Before moving, she lived in her parents' house in Seattle for two months. After moving, her mailing address was in Chicago, and she had a checking account, bank cards, and a health club membership in Chicago. But she continued to use her parents' Seattle home as a place of contact; she lived there when she was in Seattle, and she kept most of her belongings there. She also registered to vote in Washington two weeks after she moved to Chicago, swearing she was living at the Seattle address. Plaintiff's counsel contacted her at the Seattle address before serving process. Giving a liberal interpretation to "house of usual abode" in RCW 4.28.080, the Supreme Court held that the defendant had two places of usual abode: "Since [the defendant] used the family home for so many of the indicia of one's center of domestic activity, it is fair to conclude it is a center of her domestic activity." Sheldon, 129 Wash.2d at 610, 919 P.2d 1209.
Here, Ms. Kaldor took all her personal belongings and moved to Portland to be with her fiancé. Before service was attempted, Ms. Kaldor had already signed a lease commencing August 11, although dated August 15, 2000. She purchased and registered a car in Oregon. She received an Oregon driver's license. She became employed in Portland in October 2000. The record thus shows she moved to Portland on a permanent basis. Unlike the facts in Sheldon, after Ms. Kaldor moved to Portland she was not using her father's home as a center for domestic activity except to continue her use of Mr. Kaldor's address on her checking account. Compared to the Sheldon facts, this is insufficient domestic activity to render her father's house a place of usual abode. Accordingly, service at Mr. Kaldor's residence was defective.
Next, Ms. Blankenship contends Ms. Kaldor was served by mail and actual notice when her father forwarded the summons and complaint to her and discussed it with her and the insurance company.
Service of process may be accomplished by mail. RCW 4.28.080(16) provides:
In lieu of service under subsection (15) of this section, where the person cannot with reasonable diligence be served as described, the summons may be served... [b]y leaving a copy at his or her usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof, and by thereafter mailing a copy by first class mail, postage prepaid, to the person to be served at his or her usual mailing address.
Without explaining how RCW 4.28.080(16) was satisfied, Ms. Blankenship argues Mr. Kaldor became the equivalent of a process server by mailing a copy of the summons and complaint to his daughter and discussing the matter with her and his insurance agent. In essence, Ms. Blankenship argues actual notice.
This argument was rejected in Gerean v. Martin-Joven, 108 Wash.App. 963, 33 P.3d 427 (2001). In Gerean, the process server served the defendant's father even though the defendant had previously moved to Walla Walla. The next day, the father was in Walla Walla on business and gave the papers to his daughter. This court recognized Washington's specific statutory requirements for effecting service on an individual defendant and held "actual notice does not constitute sufficient service." Gerean, 108 Wash. App. at 972, 33 P.3d 427 (citing Thayer v. Edmonds, 8 Wash.App. 36, 40, 503 P.2d 1110 (1972)). Ms. Blankenship asks us to reconsider Gerean. We decline to do so.

B. Waiver of Service Requirements
The issue is whether, considering the circumstances, Ms. Kaldor waived her defense of insufficiency of service.
In certain circumstances, the affirmative defense of insufficient service of process may be waived as a matter of law. The waiver can occur in two ways: (1) the defendant's assertion of the defense is inconsistent with the defendant's previous behavior or (2) *299 the defendant's counsel has been dilatory in asserting the defense. Lybbert v. Grant County, 141 Wash.2d 29, 39, 1 P.3d 1124 (2000).
In Lybbert, our Supreme Court noted:
"[a] defendant cannot justly be allowed to lie in wait, masking by misnomer its contention that service of process has been insufficient, and then obtain a dismissal on that ground only after the statute of limitations has run, thereby depriving the plaintiff of the opportunity to cure the service defect."
Id. at 40, 1 P.3d 1124 (quoting Santos v. State Farm Fire & Cas. Co., 902 F.2d 1092, 1096 (2d Cir.1990)).
Regarding discovery, this court in Romjue v. Fairchild, 60 Wash.App. 278, 281, 803 P.2d 57, review denied, 116 Wash.2d 1026, 812 P.2d 102 (1991) noted the mere act of engaging in discovery "is not always tantamount to conduct inconsistent with a later assertion of the defense of insufficient service." "This is so because in some circumstances it may be entirely appropriate for a party to engage in discovery to determine if the facts exist to support a defense of insufficient service." Lybbert, 141 Wash.2d at 41, 1 P.3d 1124.
However, the defendants' discovery efforts in Romjue were inconsistent with an insufficient service of process defense because it was not geared toward revealing facts relating to the service of process. We held that the defendant waived the defense of insufficient service. Romjue, 60 Wash.App. at 282, 803 P.2d 57. Our Supreme Court rendered the same holding in Lybbert, based on similar facts. Lybbert, 141 Wash.2d at 45, 1 P.3d 1124. Further, our Supreme Court recently stressed the importance of raising procedural defenses "before any significant expenditures of time and money had occurred and at a time when the [plaintiff] could have remedied the defect." King v. Snohomish County, 146 Wash.2d 420, 426, 47 P.3d 563 (2002).
Ms. Kaldor's conduct was similar to that of the defendants in Romjue and Lybbert. Both parties propounded interrogatories and requests for production; Ms. Kaldor deposed Ms. Blankenship and took photographs of her residence. Ms. Kaldor's discovery efforts were not aimed at determining whether facts existed supporting the defense of insufficient service of process. Indeed, the process server's original affidavit stated that Ms. Kaldor's father was served on behalf of Ms. Kaldor.
In the process server's subsequent affidavit, Mr. Kaldor reportedly gave assurances he would turn the matter over to his insurance company and notify Ms. Kaldor. While, as discussed above, such assurances do not turn the tide in Ms. Blankenship's actual notice arguments, the circumstances still have some bearing on waiver. Implicitly, Mr. Kaldor discussed the circumstances of service with his daughter and when turning the process over to his insurance company. In this sense, the defense had access to and under its control the necessary facts to contest service well prior to the end of the 90-day period following attempted service. Further, if defense counsel had seasonably attempted to contact his client, he would have learned she resided in Portland and not at her father's house at the time of service.
While it does not appear the defense was necessarily "lying in wait" as discussed in Lybbert, the defense was tardy in asserting the insufficient service defense when it had the necessary facts within its control to make the critical assessment and failed to act earlier; in this sense, the defense was dilatory within the spirit of Lybbert. Lybbert, 141 Wash.2d at 39-41, 1 P.3d 1124. Ms. Kaldor's argument that her counsel should be excused from contacting her and ignoring Mr. Kaldor's role in the attempted service because he was retained by the insurance company and not Ms. Kaldor personally is unpersuasive.
Ms. Blankenship raises the issue of equitable estoppel for the first time in her reply brief. Because a party may not raise an issue for the first time in a reply brief, we do not reach her argument. See RAP 10.3(c). Further, without citation to authority, Ms. Blankenship contends because Mr. Kaldor accepted service in his role as policy holder and the insurance company is the real stake-holder in this automobile personal injury case, we should overlook Ms. Kaldor's role as the relevant named insured and driver.
*300 Moreover, Mr. Kaldor is not a named defendant in this action; we fail to see Ms. Blankenship's reasoning in this last argument.

CONCLUSION
Although we reject Ms. Blankenship's substituted and actual service arguments, we conclude, under these facts, Ms. Kaldor waived the affirmative defense of insufficiency of service of process.
Reversed.
SCHULTHEIS, J., and KURTZ, J., concur.