125 P.3d 134 (2005)
124 Wash.App. 516
John and Claudia O'NEILL, Appellants,
v.
FARMERS INSURANCE COMPANY OF WASHINGTON dba Farmers Insurance Group, a Washington corporation, Respondents.
No. 52378-3-I.
Court of Appeals of Washington, Division One.
November 1, 2004.
Publication Ordered December 6, 2004.
Guy William Beckett, Seattle, for Appellants.
Pellegrino L. Certa, Seattle, for Respondents.
APPELWICK, J.

NATURE OF CASE
¶ 1 The O'Neills appeal the summary judgment dismissal of their claim under a homeowner's insurance policy against Farmers Insurance Company (Farmers). The *135 O'Neills filed a summons and complaint against Farmers, alleging breach of contract, bad faith, and violation of the Consumer Protection Act (CPA). The O'Neills served the secretary of Farmers' attorney, but did not serve Farmers itself. Farmers filed a motion for summary judgment, alleging affirmative defenses including insufficiency of service. The trial court granted Farmer's motion for summary judgment. The O'Neills appeal. We affirm in part and reverse in part.

FACTS
¶ 2 Farmers Insurance Company of Washington d/b/a Farmers Insurance Group (Farmers) is a domestic insurance company. John and Claudia O'Neill insured their home under Farmers. This litigation arose from a claim the O'Neills brought against Farmers under their homeowner's insurance policy.
¶ 3 On or about September 15, 2001, the O'Neills discovered a water leak in their residence, notified Farmers of it, and filed a claim for coverage against their homeowner's policy. Farmers retained Flare Corporation (Flare) to prepare a scope of work and submit a bid to repair the damages caused by the leak. Flare estimated that the repairs would total $23,557.10. Although Flare prepared the scope of work, the O'Neills retained AACE Contracting (AACE) to do the repair work. Farmers agreed to pay AACE, and on December 6, 2001, the O'Neills entered into a contract with AACE. AACE began the repair process in January 2002. The O'Neills allege that Farmers "required the water remediation company to try to dry [the walls] by forcing warm air through the cavities of the O'Neills' home." They further alleged that this practice, along with other cost-saving measures authorized by Farmers, damaged their home. Farmers paid AACE a total of $84,751.14 for its work.
¶ 4 After AACE ceased its repair work on the O'Neills' home, the O'Neills hired Tim Wickstrom of Changing Lives to provide a repair bid on damages associated with AACE's workmanship. Changing Lives' repair estimate totaled $24,948.60. Farmers issued a check for $25,000 made out to Changing Lives and the O'Neills. Changing Lives, however, never began work because of a dispute between the O'Neills and Changing Lives.
¶ 5 On September 13, 2002, the O'Neills' counsel filed a summons and complaint against Farmers in King County Superior Court. In their complaint, the O'Neills stated that they had made a claim against Farmers under their homeowner's insurance policy for water damage to their home, that the repair work had not been completed within a reasonable time, and that Farmer's delay and defective work caused "the retention of excess moisture, and attendant decay and mold growth." They alleged breach of contract, bad faith insurance practices, and violation of Washington's Consumer Protection Act. The O'Neills stated that the date of loss was September 15, 2001, the date on which they discovered the water leak. The O'Neills policy provided:
12. Suit Against Us. We may not be sued unless there has been full compliance with all the terms of this policy. Suit on or arising out of this policy must be brought within one year after the loss.
¶ 6 On September 13, 2002, the O'Neills attorney delivered copies of the complaint to the secretary of Farmer's legal counsel, Pellegrino Certa, (Certa) at his office. Copies of the complaint were not personally delivered to either Farmers or to Certa, on September 13th, or thereafter. In its October 31, 2002 answer, Farmers listed insufficiency of service of process among its affirmative defenses. Farmers later propounded discovery requests upon the O'Neills.
¶ 7 On March 27, 2003, Farmers filed a motion for summary judgment alleging that the O'Neills' case should be dismissed because they had not served Farmers within 90 days of filing their summons and complaint. On April 17, 2003, the O'Neills filed a motion to amend their claim. Farmers' motion for summary judgment and the O'Neill's motion to amend their claim were both set to be heard on April 25, 2003. The trial court granted Farmers' motion for summary judgment, and did not consider the O'Neills' motion to amend. The O'Neills appeal.

*136 ANALYSIS

I. Supplemental Declaration
¶ 8 The O'Neills' assert that the trial court erred in failing to consider their supplemental declaration of Claudia O'Neill.
¶ 9 Farmers filed its motion for summary judgment on March 27, 2003, and a hearing date was set for April 25, 2003. On April 22, 2003, three days prior to the summary judgment hearing, the O'Neills' filed a supplemental declaration by Claudia O'Neill. Farmers filed a motion to strike as untimely and not based on personal knowledge. The court interlineated on its summary judgment order that it "did not consider the supplemental declaration of C[laudia] O'Neill as it was untimely."
¶ 10 Pursuant to CR 56(c), "[t]he adverse party may file and serve opposing affidavits, [... ] not later than 11 calendar days before the hearing." Whether to accept or reject untimely filed affidavits is within the trial court's discretion. See Brown v. Peoples Mortgage Co., 48 Wash.App. 554, 559-60, 739 P.2d 1188 (1987) (citing KCLR 56(c)(1)(B), the court found no abuse of discretion when a trial court struck a supplemental affidavit filed on the same day as a scheduled summary judgment proceeding) (citing Jobe v. Weyerhaeuser Co., 37 Wash.App. 718, 684 P.2d 719 (1984)). Here, the O'Neills filed their supplemental declarations three days prior to the summary judgment hearing. It was within the trial court's discretion to refuse to consider them timely filed.
¶ 11 Although the O'Neills acknowledge that they filed their supplemental declarations after the 11-day period prescribed in CR 56(c), they rely on Meridian Minerals Co. v. King County, 61 Wash.App. 195, 202-03, 810 P.2d 31, rev. denied, 117 Wash.2d 1017, 818 P.2d 1099 (1991) to assert that they are entitled to submit additional evidence in opposition to a motion for summary judgment at any time before the court enters a formal order. Meridian is inapposite because it concerned additional evidence submitted in support of a motion for reconsideration.
¶ 12 Because the trial court acted within its discretion in striking the O'Neills' supplemental declarations as untimely filed, the declarations are not within the scope of this record on review. The record before this court thus consists of the evidence that the trial court relied upon in entering its summary judgment.

II. Standard of Review
¶ 13 This Court reviews a grant of summary judgment de novo, engaging in the same inquiry as the trial court. Youngblood v. Schireman, 53 Wash.App. 95, 99, 765 P.2d 1312 (1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The facts and all reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party." Nivens v. 7-11 Hoagy's Corner, 133 Wash.2d 192, 197-98, 943 P.2d 286 (1997). Questions of law are reviewed de novo. Rivett v. City of Tacoma, 123 Wash.2d 573, 578, 870 P.2d 299 (1994).

III. Sufficiency of Service of Process

A. Actual Process
¶ 14 The O'Neills contend that they properly served Farmers.
¶ 15 RCW 4.16.170 governs service of process, and states:
For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint. If the action is commenced by service on one or more of the defendants or by publication, the plaintiff shall file the summons and complaint within ninety days from the date of service. If following service, *137 the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.
Washington courts have repeatedly held that the filing of a complaint does not constitute the commencement of an action for the purposes of tolling the statute of limitations. It is still necessary for the plaintiff to serve a defendant within ninety days of the date of filing in order for the commencement to be complete. Collins v. Lomas & Nettleton Co., 29 Wash.App. 415, 628 P.2d 855 (1981); Adkinson v. Digby, Inc., 99 Wash.2d 206, 660 P.2d 756 (1983); Sidis v. Brodie/Dohrmann, Inc., 117 Wash.2d 325, 815 P.2d 781 (1991).
¶ 16 The O'Neills discovered their loss on September 15, 2001, and immediately reported it to Farmers. The O'Neills' insurance policy provides that "[s]uit on or arising out of this policy must be brought within one year after the loss." They filed their action against Farmers on September 13, 2002. Pursuant to RCW 4.16.170, they needed to have served Farmers by December 12, 2002. The O'Neills delivered the papers to the secretary of Farmer's attorney on September 13, 2002. Their delivery did not constitute actual service on Farmers. Farmers has never been served.

B. Substantial Compliance with Service
¶ 17 Farmers argues that because the O'Neills failed to raise substantial compliance before the trial court, RAP 9.12 precludes them from raising it on appeal.
¶ 18 RAP 9.12 states in relevant part:
On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court. The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered[.]
RAP 9.12. Substantial compliance, however, is an argument on the issue of adequacy of service. We consider it properly before us.
¶ 19 The O'Neills maintain that even if their service did not follow the letter of the law, their service of Certa's secretary "substantially complied" with RCW 4.28.080(6). RCW 4.28.080(6) states that service of process is to be made against a domestic insurance company by serving "any agent authorized by such company to solicit insurance within this state." RCW 4.28.080(6).
¶ 20 `Substantial compliance' has been defined as[:]
actual compliance in respect to the substance essential to every reasonable objective of [a] statute. ... In the cases where substantial compliance has been found, there has been actual compliance with the statute, albeit procedurally faulty.
Weiss v. Glemp, 127 Wash.2d 726, 903 P.2d 455 (1995) (citations omitted).
¶ 21 The O'Neills argue that a number of cases support their claim that substantial compliance was sufficient to comply with the service requirement. We have recognized in numerous cases that late filing or irregular filing of an affidavit of service substantially complies with the service requirement provided that the defendant is actually served and is not injured by a failure to strictly comply. See, e.g., Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., 66 Wash.2d 469, 403 P.2d 351 (1965), cert. denied, 382 U.S. 1025, 86 S.Ct. 644, 15 L.Ed.2d 539 (1966) (substantial compliance with long-arm statute sufficient provided defendant not prejudiced by late filing); Barr v. Interbay Citizens Bank of Tampa, Florida, 96 Wash.2d 692, 696, 649 P.2d 827 (1982); Martin v. Meier, 111 Wash.2d 471 478, 760 P.2d 925 (1988) (mailed notice to defendant's last known address was notice reasonably calculated, under all the circumstances, to apprise defendant of suit and provide opportunity to object); In re Estate of Palucci, 61 Wash.App. 412, 416, 810 P.2d 970 (1991) ("where notice [is] by publication or mailing [and] has in fact been given, the failure to file proof of notice amounts to a mere irregularity"); and Sheldon v. Fettig, 129 Wash.2d 601, 919 P.2d 1209 (1996) ("house of [defendant's] usual *138 abode" in statute may be liberally construed). See also, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1949) ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."). Nevertheless, this case does not turn on dilatory or irregular filing of an affidavit of service. Rather, the issue is who may be served to constitute sufficient service.
¶ 22 The O'Neills argue that RCW 4.28.080(6) is similar to RCW 4.28.080(10), which permits service on a foreign corporation to be made by serving "any agent, cashier or secretary thereof." RCW 4.28.080(10). They reason that since the Washington Supreme Court allowed substantial compliance under RCW 4.28.080(10) in Reiner v. Pittsburg Des Moines Corp., 101 Wash.2d 475, 680 P.2d 55 (1984), their service upon Certa's secretary should suffice under RCW 4.28.080(6). However, as the court stated in Nitardy v. Snohomish County, 105 Wash.2d 133, 712 P.2d 296 (1986), "[t]he subsections of RCW 4.28.080 seem clear and explicit in their requirements on how to effectuate service." Nitardy, 105 Wash.2d at 135, 712 P.2d 296. RCW 4.28.080(6) explicitly states that service of process is to be made against a domestic insurance company by serving "any agent authorized by such company to solicit insurance within this state." The O'Neills offered no proof that Certa was authorized to solicit insurance within the state.
¶ 23 Washington courts have permitted substantial compliance where a defendant has clearly authorized service upon another, or where service was indirect. See, e.g., Lee v. Barnes, 58 Wash.2d 265, 267, 362 P.2d 237 (1961) (recognizing service as sufficient where a person was appointed by the defendant to accept service, even though statute did not appear to allow service on that individual); Thayer v. Edmonds, 8 Wash.App. 36, 41-42, 503 P.2d 1110 (1972), rev. denied, 82 Wash.2d 1001 (1973) (service sufficient where the defendant indicated that the notice could be left at the door). But the O'Neills offer no proof that Farmers ever conferred agency upon Certa for the purpose of receiving service. The O'Neills did not substantially comply with the service requirements of the statute. Service was insufficient because neither Farmers, nor any agent authorized to accept service on its behalf, was in fact served.
¶ 24 The O'Neills assert that under Crouch v. Friedman, 51 Wash.App. 731, 734, 754 P.2d 1299 (1988), the court has the inherent power to waive the rules for service of process. In Crouch, the court stated:
Although a court has the inherent power to waive the rules for service of process, Ashley v. Superior Court, 83 Wash.2d 630, 636-37, 521 P.2d 711 (1974), in the present case, the trial court interpreted CR 4(c) in accordance with its plain meaning in requiring that service be performed by a nonparty. No injustice has occurred which would warrant disturbing the trial court's decision.
Crouch, 51 Wash.App. at 734, 754 P.2d 1299. "Of course, this power does not extend to the waiving of a defendant's constitutional right to notice, but we think it is within the power and the discretion of this court and of the Superior Court to waive the particular provisions of a rule providing the method by which notice is to be given upon the condition that another method, more reasonably calculated to effectively give notice, is utilized." Ashley, 83 Wash.2d at 636-37, 521 P.2d 711. Ashley thus articulated that a notice provision may be waived, but only if the method replacing it improves notice. It was not clear that the O'Neills asked the trial court to waive the service of process rules. However, given the explicit direction of RCW 4.28.080(6) and the holding of Nitardy, the court did not abuse its discretion when it declined to waive the rules of service.

IV. Waiver of Sufficiency of Service
¶ 25 The O'Neills contend that Farmers was dilatory and engaged in conduct inconsistent with asserting the defense of insufficiency of service "by engaging in discovery concerning the merits of the O'Neills' claims before the expiration of the ninety-day period following the date they filed their Summons and Complaint, and by waiting until after the ninety-day period to file their motion to dismiss."
*139 ¶ 26 A litigant waives a defense of insufficient service of process unless the party asserts it either in a responsive pleading or in a motion under CR 12(b)(5). French v. Gabriel, 57 Wash.App. 217, 788 P.2d 569 (1990), aff'd, French v. Gabriel, 116 Wash.2d 584, 588, 806 P.2d 1234 (1991). The defense of insufficiency of service of process also may be waived by (1) dilatory conduct or (2) conduct inconsistent with asserting the defense.[1]Lybbert v. Grant County, 141 Wash.2d 29, 38-39, 1 P.3d 1124 (2000).
¶ 27 The O'Neills do not deny that Farmers asserted the affirmative defense of insufficiency of service of process in its appearance and answer. Rather, they maintain that Farmers waived the defense by engaging in discovery unrelated to its affirmative defense before moving for summary judgment. In French the court unequivocally stated that a party who raises the defense of insufficient service of process in his answer does not waive the defense by engaging in discovery. French, 116 Wash.2d at 594, 806 P.2d 1234. Elsewhere, also, the Supreme Court has stated that "engaging in discovery `is not always tantamount to conduct inconsistent with a later assertion of the defense of insufficient service.'" Lybbert, 141 Wash.2d at 41, 1 P.3d 1124 (quoting Romjue v. Fairchild, 60 Wash.App. 278, 281, 803 P.2d 57, rev. denied, 116 Wash.2d 1026, 812 P.2d 102 (1991)).
¶ 28 The O'Neills assert that King v. Snohomish County, 146 Wash.2d 420, 47 P.3d 563 (2002) overruled French and cases following it. (citing also Voicelink Data Services, Inc. v. Datapulse, Inc., 86 Wash.App. 613, 937 P.2d 1158 (1997); Romjue v. Fairchild, 60 Wash.App. 278, 281, 803 P.2d 57 (1991)). King distinguished French; it did not overrule it, and is not controlling here.
¶ 29 In King, the Supreme Court held that under the facts of that case, the defendant had waived a claim-filing defense. King, 146 Wash.2d at 425, 47 P.3d 563. Specifically, the court found that the defendant had provided evasive answers to the plaintiff's interrogatories about its intention of asserting the defense, engaged in four years of litigation before asserting it, failed to raise it during depositions, and waited to assert it in a dispositive motion after the statute of limitations had run, thus foreclosing the plaintiff's option to refile. King, 146 Wash.2d at 423-25, 47 P.3d 563. None of the factors present in King are present in this case.[2]
¶ 30 Farmers put the O'Neills on notice of the service of process defense before the expiration of the statute of limitations and before discovery. Because Farmers raised the defense within the statute of limitations, *140 the O'Neills had the chance to properly serve Farmers. The O'Neills did not conduct discovery or otherwise inquire to determine why Farmers had asserted the defense in its appearance and answer. Unlike King, Farmers asserted its defense in its first dispositive motion before the statute of limitations had run. Further, the record contains no evidence that Farmers delayed filing this motion to ensure the statute of limitations precluded refilling. The O'Neills' failure to act foreclosed a chance to timely cure their defective service. The trial court did not err when it dismissed the O'Neills' claims on its insurance policy.

V. Bad Faith and Consumer Protection Act Claims
¶ 31 Farmers argues that we should not reach these issues because under RAP 9.12 they were not argued before the trial court. However, they were disposed of in the summary judgment granted by the trial court based on Farmers' argument that failure to serve was fatal to all claims. Whether the court erred in this regard is properly before us.
¶ 32 The O'Neills also assert that the statute of limitations on their bad faith and CPA claims had not expired as of September 13, 2002, and that therefore the trial court erred in dismissing those claims with prejudice. Under RCW 4.16.080, claims for bad faith are subject to a three-year statute of limitations. Claims under the CPA are subject to a four-year statute of limitations. RCW 19.86.120. Farmers asserts that the trial court properly dismissed all claims before it because the O'Neills failed to complete proper service.
¶ 33 Although the O'Neills did not raise the statute of limitations issue at the summary judgment hearing, they alleged bad faith and CPA violation claims in their original complaint. They maintain that Simms v. Allstate Ins. Co., 27 Wash.App. 872, 621 P.2d 155 (1980), is controlling. In Simms, the court differentiated between the parties' contractual relationship and claims arising out of it, and claims asserting a violation of the CPA. Simms, 27 Wash.App. at 878, 621 P.2d 155. Simms concluded that the plaintiff's CPA claim survived the plaintiff's failure to bring suit on the underlying contract claim within the contract limitation period. Simms, 27 Wash.App. at 878, 621 P.2d 155. Simms discussed a California Appeals case, Murphy v. Allstate Ins. Co., 83 Cal.App.3d 38, 147 Cal.Rptr. 565 (1978), which interpreted a contractual limitation period similar to the one in the O'Neills' policy. Murphy concluded:
[T]he words `any claim' taken together with the words `on this policy' and `within 12 months next after inception of the loss' plainly refer to a claim from a loss covered by the policy. This provision has no applicability to an action unless it is an action on the policy.
Murphy, 83 Cal.App.3d at 44, 147 Cal.Rptr. 565, as quoted in Simms, 27 Wash.App. at 878, 621 P.2d 155. Murphy reasoned:
[W]hile it is true that a bad faith claim is predicated upon a breach of the duty of good faith and fair dealing that arises out of the contractual relationship between the parties ... and while the implied covenant of good faith and fair dealing is `immanent in the contract' ..., the duty of good faith and fair dealing is not strictly a contractual obligation. It is an obligation imposed by law which governs a party to a contract in discharging its contractual responsibilities.
Murphy, 83 Cal.App.3d at 48, 147 Cal.Rptr. 565, as quoted in Simms, 27 Wash.App. at 878, 621 P.2d 155. Simms adopted Murphy, interpreting the language "on this policy for the recovery of any claim" to mean "claims compensable under the contract, not claims arising under an independent statute." Simms, 27 Wash.App. at 878, 621 P.2d 155. In reaching its holding, Simms stated that the CPA "should not be frustrated by a limitations period required in all contracts of fire insurance." Simms, 27 Wash.App. at 878, 621 P.2d 155. Simms was a fire insurance case, but its goal of protecting consumers by preserving statutory limitations periods even when an underlying contractual limitations period has expired, is applicable to general homeowners' policy cases as well.
¶ 34 The trial court dismissed all of the O'Neills' claims with prejudice. We hold *141 that under Simms, the proper result was dismissal of the bad faith and CPA violation claims without prejudice. We reverse the dismissal with prejudice as to these issues.

VI. Attorney Fees and Costs
¶ 35 The O'Neills' request attorney fees under Olympic S.S. Co., Inc. v. Centennial Ins. Co., 117 Wash.2d 37, 53, 811 P.2d 673 (1991). Under Olympic Steamship "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." Because the O'Neills do not prevail on their contractual claim, Olympic Steamship is not grounds for a fee award.

CONCLUSION
¶ 36 The O'Neills failed to properly serve Farmers, and Farmers did not waive the affirmative defense of insufficiency of service. Accordingly, the trial court did not err when it granted Farmers summary judgment and dismissal of the O'Neills' contract claims with prejudice. We affirm this dismissal. However, under Simms, the O'Neills' claims for bad faith and CPA violations should have been dismissed on summary judgment without prejudice. We reverse the trial court's dismissal of the bad faith and CPA claims with prejudice, but affirm the dismissal of those claims without prejudice.
¶ 37 Affirmed in part. Reversed in part.
ELLINGTON and BAKER, JJ., concur.
NOTES
[1] In Lybbert, the plaintiffs sought to commence a personal injury action against Grant County. The accident occurred in early 1993 and the complaint was filed and served on August 30, 1995. Pursuant to statute, the plaintiffs were required to serve the county auditor, but instead served the administrative assistant to the county commissioners. Lybbert, 141 Wash.2d at 32, 1 P.3d 1124. Although the defendant filed and served a notice of appearance it did not file or serve an answer until July 21, 1996, after the statute of limitations had expired. Lybbert, 141 Wash.2d at 32, 1 P.3d 1124. The defendants also ignored the plaintiffs' interrogatories served on February 29, 1996, which asked whether the defendant would be relying upon the affirmative defense of insufficient service of process. Finally, the defendant acted as though it was preparing to litigate the merits. Lybbert, 141 Wash.2d at 32-33, 1 P.3d 1124.

The defendant moved for summary judgment, arguing that it was not properly served and the statute of limitations had expired. Lybbert, 141 Wash.2d at 33-34, 1 P.3d 1124. The trial court granted summary judgment and dismissed the complaint with prejudice. The Court of Appeals reversed, holding that the county waived the defense of insufficient serve of process and was equitably estopped from asserting it. The Supreme Court did not find that the defendant was equitably estopped from asserting the defense. However, the Court found that the defendant waived the defense of insufficient service. Lybbert, 141 Wash.2d at 38-39, 1 P.3d 1124.
[2] For similar reasons, this case is not analogous to Blankenship v. Kaldor, 114 Wash.App. 312, 57 P.3d 295 (2002), rev. denied, 149 Wash.2d 1021, 72 P.3d 761 (2003), as the O'Neills argue. In Blankenship the defendant propounded interrogatories and requests for production prior to fling an answer. Blankenship, 114 Wash.App. at 315, 57 P.3d 295 (emphasis added). More than a year later, after the statute of limitations had run, it filed an answer pleading an affirmative defense of insufficiency of service of process. Blankenship, 114 Wash.App. at 315, 57 P.3d 295. Citing Lybbert, the court on appeal held that the defendant had waived the defense by its dilatory conduct. Blankenship, 114 Wash.App. at 318-19, 57 P.3d 295.