# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KELLI THOMAS, | No. 57013-1-II |
| Appellant, | |
| v. | |
| BETHEL SCHOOL DISTRICT NO. 403, | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. – Kelli Thomas appeals the summary judgment dismissal of her claims for hostile work environment based on sexual harassment, retaliation, wrongful termination in violation of public policy, intentional infliction of emotional distress (tort of outrage), and negligent infliction of emotional distress against Bethel School District No. 403 (District). She alleges that she presented a prima facie case for all of her claims. We conclude that summary judgment dismissal was appropriate and affirm.

## FACTS

In August 2017, the District hired Thomas as an administrative assistant to Chris Brauer, one of the District's elementary school principals. The two had sons who both played high school football and trained at the same facility. Thomas and Brauer would occasionally exchange text messages about work-related issues or football events. After one football training event, Brauer texted Thomas, "Good to see you tonight...have a great Sunday." Clerk's Papers (CP) at 161 (alteration in original). At the end of winter break, Brauer texted Thomas, "Can't wait to see you tomorrow Kelli...Happy New Year!" CP at 160 (alteration in original).

Thomas claims that Brauer complimented her on how she looked and once, at the end of the day, rubbed her back and told her in a low voice it was time to go home. She also claims that Brauer greeted her with a bear hug at a football training session and introduced her to his brother-in-law and son. When Thomas introduced herself as Brauer's secretary, Brauer replied, "No. You're more than that." CP at 399. He gave her another bear hug when she left. Thomas further claims that on one occasion Brauer asked how her husband's relationship was with his daughter after discussing Brauer's relationship with his daughter. On another occasion, Brauer commented that marriage is not what it used to be, after discussing a concern about a student's divorced parents.

On another occasion, Thomas claims that Brauer told her that his prior administrative assistant would bring him peanut butter and jelly sandwiches and that she should consider doing the same. Thomas also claims that Brauer invited her to a bar and opened the blinds to a window in his office that faced her desk.

In February 2018, Thomas reported to the District's Human Resources Director, Leigh Sinclair, that Brauer was sexually harassing her. Thomas told Sinclair that Brauer had rubbed her back while speaking to her in a low intimate tone, bear hugged her, inquired about her husband's relationship with their daughter, and asked her to make him peanut butter and jelly sandwiches.

The District's Executive Director of Human Resources, Todd Mitchell, met with Thomas, Sinclair, and Thomas's union representative about Thomas's complaint. After the meeting, Mitchell concluded there was "enough here to have a conversation (w/[Brauer])" and that there needed to be a change in behavior. CP at 130. Mitchell gave Thomas a copy of the District's

sexual harassment policy and asked her to review it and decide whether her complaint should be treated as formal or informal.[1]

Thomas alleges that the District imposed a gag order, restricting her from discussing her allegations against Brauer. But there is no written direction to that effect and Thomas could not recall who told her she could not discuss the matter.

Mitchell met with Brauer, who was surprised by the allegations. Brauer "largely confirmed" the actions but clarified they were "not intended to be sexual in nature." CP at 255, 265. He stated that Thomas had a difficult time when she first started and that he attempted to be encouraging and to communicate that she was doing a good job. Brauer thought the two were friends and that it was mutually acceptable to discuss family and mutual friends and to make joking comments.

Brauer told Mitchell that he would immediately modify his interactions with Thomas. He agreed to limit physical contact, limit personal conversation, and be cognizant of the personal space comforts of others.

Thomas continued at her current position without loss in pay or benefits. At first, Brauer exaggerated giving space to Thomas by walking near the wall when he passed Thomas, having other staff relay information to Thomas, and assigning tasks to other staff. But eventually, Brauer's conduct became clinical and not as exaggerated. All inappropriate advances and touching stopped. Thomas e-mailed Mitchell that she noticed an immediate change in Brauer. She also stated that she felt awkward and uncomfortable, but she did not feel threatened by Brauer's conduct "so it is

---

[1] An informal complaint entails the employee and supervisor attempting to resolve a grievance together. A formal complaint involves submitting the matter to human resources, the District's superintendent, and arbitration, if necessary.

3

a good thing." CP at 138. Thomas also clarified that her intent was that her complaint was informal.

In March 2018, Thomas e-mailed Mitchell again, stating, "[Brauer's] behavior has changed and I am grateful for that. But, because of this, he has very little interaction with me." CP at 141. Thomas inquired about the process of applying for another position within the District.

In May 2018, Thomas accepted a position as registrar at one of the District's middle schools and resigned from her administrative assistant position. Thomas stated that this was a lower level position. But she pursued this position to maintain her seniority within the District and her benefits.

In February 2021, Thomas filed a complaint against the District for hostile work environment based on sexual harassment; violation of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW; retaliation; wrongful termination in violation of public policy; intentional infliction of emotional distress (tort of outrage); and negligent infliction of emotional distress.

The District filed a motion for summary judgment, seeking to dismiss all of Thomas's claims. The summary judgment hearing was scheduled for April 22, 2022. After all briefing was in on the motion, Thomas filed a surreply on April 20. The only evidence attached to the surreply was a declaration from Thomas, clarifying her arguments and commenting on exhibits attached to her original response to the District's motion for summary judgment. The District argued that the surreply should not be considered because it was not a permissible pleading under Pierce County Superior County Local Rules. The trial court agreed and struck it.

The trial court granted the District's motion for summary judgment, in part, dismissing Thomas's hostile work environment claim based on sexual harassment and intentional infliction

4

of emotional distress (tort of outrage) claims. Both the District and Thomas filed motions for reconsideration. The trial court granted the District's motion for reconsideration and dismissed the remainder of Thomas's claims.

Thomas appeals the trial court's summary judgment dismissal of her claims.

## ANALYSIS

Thomas contends that the trial court erred by granting the District's motion for summary judgment and dismissing her claims. She contends that she presented a prima facie case for hostile work environment based on sexual harassment, retaliation, wrongful termination in violation of public policy, intentional infliction of emotional distress (tort of outrage), and negligent infliction of emotional distress. We disagree.

### I.     SUMMARY JUDGMENT STANDARD OF REVIEW

We review summary judgment orders de novo. *Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 410, 430 P.3d 229 (2018). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). Although evidence is viewed in the light most favorable to the nonmoving party, if that party bears the burden of proof on the issue and fails to make a factual showing sufficient to establish an element essential to the party's case, summary judgment is warranted. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

### II.     SURREPLY

As an initial matter, Thomas argues that the trial court erred in striking her surreply before the April 22, 2022 summary judgment hearing. She argues that the trial court was required to go through the factors set forth in *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997), before striking her surreply. We disagree.

5

Neither CR 56(c), nor Pierce County Superior Court Local Rules authorize a party to file a surreply. *See* CR 56(c) (requiring responding affidavits to be filed not later than 11 days before the hearing); PCLR 7(a)(3)-(6). Like CR 56, the local rules merely provide for the filing of a motion, a response, and a reply. *Id.* It is within a trial court's discretion whether to accept a surreply. *See O'Neill v. Farmers Ins. Co. of Wash.*, 124 Wn. App. 516, 521, 125 P.3d 134 (2004).

In *Keck v. Collins*, 184 Wn.2d 358, 369, 357 P.3d 1080 (2015), the court held that a *Burnet* analysis is "appropriate when the trial court excludes untimely evidence submitted in response to a summary judgment motion." The three *Burnet* factors include whether a lesser sanction would probably suffice, whether the violation was willful or deliberate, and whether the violation substantially prejudiced the opposing party. 131 Wn.2d at 494. The *Burnet* analysis promotes the purpose of summary judgment, which is to test the sufficiency of evidence before trial, not to cut litigants off from their right to a jury trial when they have evidence to present. *Keck*, 184 Wn.2d at 369.

In *Keck*, the trial court struck a doctor's affidavit as untimely. *Id.* at 366. Here, the trial court struck an untimely and impermissible pleading that only contained a declaration from Thomas commenting on previously submitted evidence. This case is distinguished from *Keck* because it did not involve the introduction of new evidence. Even assuming the *Burnet* analysis was required, the factors are satisfied to warrant striking Thomas's late pleading.

Because Thomas was not entitled to file an additional pleading in opposition to the District's motion for summary judgment and because the circumstances satisfy the *Burnet* analysis, the court did not err by striking Thomas's surreply.

III.    HOSTILE WORK ENVIRONMENT BASED ON SEXUAL HARASSMENT

Thomas argues that Brauer's actions created a hostile work environment based on sexual harassment. We disagree.

The WLAD protects employees from sexual harassment. RCW 49.60.030(1). RCW 49.60.030(1)(a) provides that the "[t]he right to be free from discrimination because of . . . sex . . . shall include, but not be limited to . . . [t]he right to obtain and hold employment without discrimination." This right includes the right not to be subjected to sexual harassment. *Glasgow v. Georgia-Pac. Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985).

Sexual harassment claims are characterized as either "'quid pro quo harassment'" or "'hostile work environment.'" *DeWater v. State*, 130 Wn.2d 128, 134, 921 P.2d 1059 (1996) (quoting *Payne v. Children's Home Soc'y of Wash., Inc.,* 77 Wn. App. 507, 511 n.2, 892 P.2d 1102 (1995)). To establish a prima facie case for a hostile work environment based on sexual harassment, the employee must show that the harassment (1) was unwelcome and offensive; (2) the conduct was because of sex; (3) the conduct was sufficiently pervasive that it altered the terms or conditions of employment and created an abusive working environment; and (4) the conduct is imputable to the employer. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 275, 285 P.3d 854 (2012). Summary judgment is appropriate if the plaintiff cannot establish all elements of a prima facie case of hostile work environment based on sexual harassment. *Payne* , 77 Wn. App. at 516.

Thomas cannot establish element three. To determine if conduct is sufficiently pervasive, courts look to the totality of the circumstances, considering factors like "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *MacDonald v. Korum Ford*, 80 Wn. App. 877, 885, 912 P.2d 1052 (1996) (quoting

*Harris v. Forklift Sys. Inc*., 510 U.S. 17, 20, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).  Summary judgment dismissal of the plaintiff's claims is appropriate if there is no genuine issue as to whether the plaintiff's submissions demonstrate nothing more than "[c]asual, isolated or trivial manifestations of a discriminatory environment [that] do not affect the terms and conditions of employment to a sufficiently significant degree to violate the law." *Glasgow*, 103 Wn.2d at 406.  This is the case here.

Viewing the facts in the light most favorable to Thomas, Brauer rubbed her back at the end of a school day and told her to go home in a low voice, gave her two bear hugs in front of his brother-in-law and son at a football game, commented that she was more than a secretary, sent text messages outside of work hours that were not overtly sexual, inquired regarding Thomas's husband's relationship with his daughter, commented on marriages not being what they used to be, opened the blinds in his office, and insinuated that she should make him peanut butter and jelly sandwiches like his prior administrative assistant.

Thomas reported this conduct to the District.  The District met with Brauer, and Brauer agreed to immediately modify his interactions with Thomas.  Brauer limited physical contact and limited personal conversation.  Thomas admitted the conduct stopped.  Thomas continued to do her job without loss in pay or benefits.

The harassment alleged by Thomas was not sufficiently pervasive so as to alter the conditions of her employment.  While some of Brauer's actions were inappropriate, the WLAD is not a "'general civility code.'" *Adams v. Able Bldg. Supply, Inc*., 114 Wn. App. 291, 297, 57 P.3d 280 (2002) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).  We appreciate the difficulty in working without a civility code.  But viewing the facts in the light most favorable to Thomas, she describes casual, isolated or trivial

manifestations of a discriminatory environment. *Glasgow*, 103 Wn.2d at 406. Accordingly, Thomas fails to make a prima facie showing of a hostile work environment, and summary judgment dismissal of this claim was appropriate.

IV.    RETALIATION

Thomas next argues that the District retaliated against her after she reported Brauer's actions. She points to the incident where Brauer walked next to the wall when passing her, his speaking to others instead of Thomas, his giving assignments to other staff, and the alleged gag order as evidence of retaliation. We disagree.

A prima facie case of retaliation requires Thomas to show that (1) she engaged in statutorily protected activity, (2) the District took an adverse employment action against her, and (3) there is a causal link between her activity and the District's adverse action. *Cornwell*, 192 Wn.2d at 411. To avoid summary judgment, Thomas must show a tangible adverse employment action. *Marin v. King County*, 194 Wn. App. 795, 808, 378 P.3d 203 (2016). A tangible adverse employment action is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)).

Viewing the facts in the light most favorable to Thomas, Brauer exaggerated giving Thomas space by walking near the wall when passing her. He had other staff relay information to her and asked other staff to assist him. And the District verbally imposed a gag order. But even assuming the facts as Thomas presents them, no reasonable factfinder could conclude that these are adverse employment actions. None of these actions led to a change of employment status or discipline. Thomas continued to work for the District without loss in pay or benefits. She has not

shown a significant reduction or change in work assignments. Accordingly, Thomas fails to show a prima facie case for retaliation.

V.    WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

Thomas argues that she was wrongfully terminated in violation of public policy. The District responds that Thomas was never discharged. We agree with the District.

In Washington, employment of indefinite duration generally may be terminated by either the employer or the employee at any time, with or without cause. *Bulman v. Safeway, Inc*., 144 Wn.2d 335, 340, 27 P.3d 1172 (2001). As a narrow exception to the employment at will doctrine, an employer cannot terminate an employee for "'reasons that contravene a clear mandate of public policy.'" *Martin v. Gonzaga Univ*., 191 Wn.2d 712, 723, 425 P.3d 837 (2018) (quoting *Thompson v. St. Regis Paper Co*., 102 Wn.2d 219, 232, 685 P.2d 1081 (1984)). Violation of this rule gives rise to a claim for wrongful discharge in violation of public policy. *Id*. at 722-23.

A wrongful termination in violation of public policy claim requires that the employee be discharged, either expressly or constructively. *Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc*., 6 Wn. App. 2d 803, 829, 431 P.3d 1018 (2018). The elements of a claim of constructive discharge are that (1) the employer deliberately made working conditions intolerable, (2) a reasonable person in the employee's position would be forced to resign, (3) the employee resigned because of the intolerable condition and not for any other reason, and (4) the employee suffered damages as a result of being forced to resign. *Id.*

Here, Thomas continued at her current position without loss in pay or benefits and without a significant change in her work assignments. Brauer's inappropriate behavior stopped after Mitchell discussed Thomas's allegations with Brauer. Thomas expressed that she was grateful the behavior stopped. Thomas continued in her administrative assistant position until May 2018 and

10

then changed positions within the District to registrar at one of the District's middle schools, where she maintained her seniority and benefits.

Even viewing all of the facts in the light most favorable to Thomas, these facts do not show that working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. Even if Thomas could show she was forced to resign, she fails to show damages. Accordingly, Thomas fails to establish a prima facie case for wrongful termination sufficient to survive summary judgment.

VI.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (TORT OF OUTRAGE)

Thomas next argues that she presented a prima facie claim of outrageous conduct and that the matter should have been submitted to a jury. We disagree.

To prevail on a claim for intentional infliction of emotional distress, also referred to as the tort of outrage, "the plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of emotional distress." *Spicer v. Patnode*, 9 Wn. App. 2d 283, 292, 443 P.3d 801 (2019). "[I]t is not enough that a 'defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d. (1965)). Rather, "the conduct at issue 'must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Spicer*, 9 Wn. App. 2d at 292 (internal quotation marks omitted) (quoting *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 91, 419 P.3d 819 (2018)). The question of whether conduct is sufficiently extreme and outrageous to

impose liability is a question for the jury unless the court determines that reasonable minds could not differ on whether the conduct was sufficiently extreme. *Spicer*, 9 Wn. App. 2d at 292-93.

Here, Brauer was surprised by Thomas's allegations. Brauer told Mitchell that he would immediately modify his interactions with Thomas. And he did. Thomas informed Mitchell that she intended her complaint to be informal. Reasonable minds could not differ that this does not amount to extreme and outrageous conduct to establish a prima facie claim for intentional infliction of emotional distress (tort of outrage).

VII.    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Thomas argues she suffered negligent infliction of emotional distress from both Brauer's and the District's actions. We disagree.

"The tort of negligent infliction of emotional distress is a limited, judicially created cause of action." *Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 49, 176 P.3d 497 (2008). A plaintiff may recover for negligent infliction of emotional distress by proving duty, breach, proximate cause, damage, and objective symptomatology. *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 505, 325 P.3d 193 (2014). In other words, the plaintiff must have been a foreseeable plaintiff, who reasonably suffered emotional distress, caused by the negligent conduct of the defendant, and confirmed by objective symptomatology. *Id.*; *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560, 293 P.3d 1168 (2013).

A claim for negligent infliction of emotional distress can arise in the employment setting. *Chea v. Men's Wearhouse, Inc.*, 85 Wn. App. 405, 412, 932 P.2d 1216 (1997). But courts have noted that "[t]he workplace is not stress free." *Snyder v. Med. Serv. Corp. of E. Wash.*, 98 Wn. App. 315, 324, 988 P.2d 1023 (1999), *aff'd*, 145 Wn.2d 233, 35 P.3d 1158 (2001).

Here, some of Brauer's actions were inappropriate, but this behavior immediately stopped after the District met with Brauer. Assuming Thomas's description of the facts is true as we must, he over-corrected his behavior at first, and in one instance behaved immaturely by shimmying down a wall, but then the work environment became clinical. Thomas continued to work for Brauer for approximately two more months and then transferred to another position within the District. While these events probably caused stress and discomfort for Thomas, she offered no proof of objective symptomology as required. Accordingly, Thomas fails to show a prima facie case for negligent infliction of emotional distress.

## VIII. ATTORNEY FEES

Lastly, both parties request attorney fees. Under RAP 18.1(b) a party requesting attorney fees must do so in a separate section of his or her opening brief. Moreover, the party must provide applicable law and argument in support of his or her request for attorney fees. RAP 18.1(a); RAP 10.3(a)(6).

Thomas requested attorney fees in the last sentence of her opening brief. She failed to devote a separate section to her request, and she failed to provide any law or factual support for her request. Accordingly, we deny Thomas's request for attorney fees. The District devoted a separate section to its request, but the District failed to provide applicable law and argument in support of its request. Accordingly, the District's request for attorney fees is also denied.

## CONCLUSION

The trial court properly granted the District's motion for summary judgement and dismissed Thomas's claims for hostile work environment based on sexual harassment, retaliation, wrongful termination in violation of public policy, intentional infliction of emotional distress (tort of outrage), and negligent infliction of emotional distress.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Glasgow, C.J.

_____
Price, J.